UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------- x

JALEEL FIELDS,

                                Plaintiff,

                -against-

CITY OF NEW YORK, POLICE OFFICER LEON
PEDIGO, SHIELD NO. 10445, PSA2, POLICE OFFICER
VLADIMIR RAVICH, SHIELD NO. 14673,

                                  Defendants.

-------------------------------------------------------------------- x

**COMPLAINT AND
JURY DEMAND**

Docket No. 14CV1201

ECF CASE

Plaintiff Jaleel Fields by his attorney Cynthia H. Conti-Cook, of Stoll, Glickman & Bellina, LLP, for his complaint against defendant New York Police Department officers, alleges as follows:

## PRELIMINARY STATEMENT

1.    This is a civil rights action in which plaintiff seeks relief through 42 U.S.C. §1983 and 42 U.S. §1988 for the violation of his civil rights protected by the Fourth and Fourteenth Amendments, in addition to violations of the laws and Constitution of the State of New York.

2.    The claim arises from a February 22, 2014 incident in which defendants, acting under color of state law, through perjury, assault and false imprisonment, violated Mr. Fields' constitutional rights.

3.    Defendant City of New York has direct supervisory authority over defendants and failed to properly supervise, train, discipline and control these officers. In particular, Ravich and Pedigo have an extensive record of misconduct for which the City of New

York has paid thousands of dollars in settlement fees and litigation expenses without any scrutiny given towards the officers' civil rights violations.

4.    Plaintiff seeks monetary damages (special, compensatory, and punitive) against defendants, as well as an award of costs and attorneys' fees, and such other and further relief as the Court deems just and proper.

## JURISDICTION

5.    This action arises under the Fourth and Fourteenth Amendments to the United States Constitution and under 42 U.S.C. §1983 and §1988 and the laws and Constitution of the State of New York.

6.    The jurisdiction of this court is predicated upon 28 U.S.C. §§ 1331, 1343(a)(3) and (4), 1367(a) and the doctrine of pendent jurisdiction.

7.    The amount in controversy exceeds $75,000.00 excluding interest and costs.

## VENUE

8.    Venue is laid within the Eastern District of New York in that Defendant City of New York is located within and a substantial part of the events giving rise to the claim occurred within the boundaries of the Eastern District.

## PARTIES

9.    Plaintiff resided at all times here relevant in Kings County, City and State of New York.

10.    The City of New York (or "the City") is a municipal corporation organized under the laws of the State of New York.  At all times relevant hereto, Defendant City, acting through the New York Police Department (or "NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters and was

responsible for the appointment, training, supervision, discipline and retention and conduct of all NYPD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the NYPD, and for ensuring that the NYPD personnel obey the laws of the United States and the State of New York.

11.  Police Officer Leon Pedigo was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Pedigo was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Pedigo was under the command of the PSA2 precinct on the date of the incident. While an officer at the PSA2 precinct, Pedigo's supervisors failed to train, supervise, discipline and control Pedigo, despite having knowledge of a history of constitutional civil rights violations through lawsuits, civilian complaints and dismissed criminal charges. On information and belief, at all times relevant hereto, Defendant Pedigo was under the command of the PSA2 precinct and is sued in his individual capacity.

12.  Police Officer Vladmir Ravich was, at all times here relevant, a police officer of the NYPD, and as such was acting in the capacity of an agent, servant and employee of the City of New York. On information and belief, at all times relevant hereto, Defendant Ravich was involved in the decision to arrest plaintiff without probable cause or failed to intervene in the actions of his fellow officers when he observed them arresting plaintiff without probable cause. Upon information and belief, defendant Ravich was under the command of the PSA2 precinct on the date of the incident. While an officer at the PSA2

precinct, Ravich's supervisors failed to train, supervise, discipline and control Ravich despite having knowledge of a history of constitutional civil rights violations through lawsuits, civilian complaints and dismissed criminal charges. On information and belief, at all times relevant hereto, Defendant Ravich was under the command of the PSA2 precinct and is sued in his individual capacity.

13.   At all times here mentioned defendants were acting under color of state law, to wit, under color of the statutes, ordinances, regulations, policies, customs and usages of the City and State of New York.

## NOTICE OF CLAIM

14.   Within 90 days of the events giving rise to these claims, plaintiff filed written notices of claim with the New York City Office of the Comptroller.  Over 30 days have elapsed since the filing of those notices, and this matter has not been settled or otherwise disposed of.

## FACTUAL CHARGES

15.   On February 22, 2013, at approximately 6:00 p.m. at 360 Dumont Avenue, Brooklyn, New York, Mr. Fields left his apartment where he lives with his mother to go to the store.

16.   360 Dumont Avenue is a New York City Housing Authority building in the jurisdiction of New York Police Department Public Service Area 2 (or "PSA2") and the 73rd precinct.

17.   When Mr. Fields came down to the lobby from the stairway, there was a large number of young people outside of the building.

18.   A female neighbor saw him and asked where he was going. He told her he was

headed to the store and she essentially warned him against going outside.

19.   She grabbed him and brought him inside the building. They both got in the elevator together.

20.   After they got in the elevator, other young people and two police officers, defendants here, entered.

21.   In the elevator, Officer Ravich started pushing, yelling, and being disrespectful to several of the young people in the elevator.

22.   Officer Ravich banged one young man's head in the elevator and the young man started laughing, causing the other young people, including plaintiff, to also start laughing.

23.   Officer Pedigo started yelling at Mr. Fields, asking essentially what was he laughing at.

24.   Mr. Fields took his phone out and attempted to photograph the officers' badges.

25.   The elevator door opened at the third floor and Mr. Fields and his female neighbor tried to get out.

26.   Officer Pedigo stepped in front of Mr. Fields, not allowing him to get out of the elevator and accusing him of bumping Officer Ravich as he was trying to leave.

27.   Pedigo pushed Mr. Fields into the back of the elevator.

28.   Ravich turned around and grabbed Mr. Fields by his jacket and pushed him out of the elevator.

29.   Mr. Fields verbally objected to the officers' actions as he was pushed outside the elevator.

30.   He did not assault either officer at all.

31.  Ravich followed Mr. Fields off the elevator, followed by Pedigo.

32.  Outside the elevator, on the third floor, Ravich grabbed Mr. Fields' jacket, pulled Mr. Fields away from the elevator and let him go.

33.  The young people in the elevator followed the police into the hallway.

34.  Ravich told Mr. Fields to calm down and that he was free to go, but while Ravich was still talking, Officer Pedigo punched Mr. Fields on the right side of his face, near the temple in front of his right ear.

35.  After the punch, Mr. Fields hit the wall and then fell on the ground.

36.  On the ground, Mr. Fields started essentially yelling "go get my mother".

37.  Ravich told the young people to leave and they went to get Mr. Fields' mother.

38.  Mr. Fields' mother came downstairs asking what he was being arrested for and Officer Pedigo grabbed her by the arm and threatened to arrest her.

39.  Mr. Fields was taken to the PSA2 station.

40.  At PSA2 he was questioned by detectives.

41.  He was taken by an ambulance to Brookdale Hospital and treated for a 1 cm laceration.

42.  At the hospital, he was also forced to receive HIV/AIDS testing.

43.  Mr. Fields went back to the precinct from the hospital and was in custody until released from arraignment for approximately twenty-four hours.

44.  After he was released on his own recognizance, he came back to court several times before it was dismissed.

45.  Defendants Pedigo and Ravich committed perjury through several false statements in the accusatory instrument including false statements that Mr. Fields blocked

the elevator doors and assaulted Ravich.

46. Defendants made these false statements to cover up their own misconduct and to maliciously charge Mr. Fields with conduct they knew he did not commit.

47. Mr. Fields has a permanent scar from the officer's punch.

48. At all times during the events described above, the defendant police officers were engaged in a joint venture and formed an agreement to violate plaintiff's rights. The individual officers assisted each other in performing the various actions described and lent their physical presence and support and the authority of their office to each other during said events. They failed to intervene in the obviously illegal actions of their fellow officers against plaintiff.

49. During all of the events above described, defendants acted maliciously and with intent to injure plaintiff.

<u>DAMAGES</u>

50. As a direct and proximate result of the acts of defendants, plaintiff suffered the following injuries and damages:

    a.    Violation of his rights pursuant to the Fourth Amendment of the United States Constitution to be free from an unreasonable search and seizure of their persons;

    b.    Violation of his rights pursuant to the Fourteenth Amendment of the United States Constitution to due process;

    c.    Violation of his New York State Constitutional rights under Article 1, Section 12 to be free from an unreasonable search and seizure;

d.     Violation of his New York State Constitutional rights under Article 1, Section 6 to due process;

e.     Physical pain and suffering;

f.     Emotional trauma and suffering, including fear, embarrassment, humiliation, emotional distress, frustration, extreme inconvenience, anxiety;

g.     Loss of liberty; and

h.     Attorney's and court fees.

## FIRST CAUSE OF ACTION
Defendants Pedigo and Ravich Falsely Arrested and Falsely Imprisoned
Plaintiff Under 42 U.S.C. § 1983

51.  The above paragraphs are here incorporated by reference.

52.  The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiff.

53.  The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of plaintiff was carried out without a valid warrant, without plaintiff's consent, and without probable cause or reasonable suspicion.

54.  At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiff.

55.  Throughout this period, plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, imprisoned and falsely charged.

56.  At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiff was without basis and without probable cause or reasonable suspicion.

57.  All of this occurred without any illegal conduct by plaintiff.

58.  All charges were dismissed.

59. The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by the United States Constitution.

60. As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

SECOND CAUSE OF ACTION
New York State Constitution Article I §12
False Arrest and False Imprisonment
(Against All Defendants)

61. The above paragraphs are here incorporated by reference.

62. The officer defendants wrongfully and illegally arrested, detained and imprisoned plaintiff.

63. The wrongful, unjustifiable, and unlawful apprehension, arrest, detention, and imprisonment of plaintiff was carried out without a valid warrant, without plaintiff's consent, and without probable cause or reasonable suspicion.

64. At all relevant times, defendants acted forcibly in apprehending, arresting, and imprisoning plaintiff.

65. Throughout this period, plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, imprisoned and falsely charged.

66. At all times, the unlawful, wrongful, and false arrest and imprisonment of plaintiff was without basis and without probable cause or reasonable suspicion.

67. All of this occurred without any illegal conduct by plaintiff.

68.   All charges were dismissed.

69.   Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

70.   Defendants acted with a knowing, willful, wanton, grossly reckless, unlawful, unreasonable, unconscionable, and flagrant disregard of plaintiff's rights, privileges, welfare, and well-being and are guilty of egregious and gross misconduct towards plaintiff.

71.   The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by the Constitution of the State of New York.

72.   As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

THIRD CAUSE OF ACTION
False Arrest and False Imprisonment
(Against All Defendants)

73.   The above paragraphs are here incorporated by reference.

74.   Defendants subjected plaintiff to false arrest, false imprisonment, and deprivation of liberty without probable cause.

75.   Defendants intended to confine plaintiff, plaintiff was conscious of his

10

confinement and did not consent to his confinement.

76.   All charges were dismissed.

77.   Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

78.   As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

FOURTH CAUSE OF ACTION
Malicious Prosecution
(Against All Defendants)

79.   The preceding paragraphs are here incorporated by reference.

80.   Defendants, acting with malice, initiated a prosecution against plaintiff and caused him to be prosecuted.

81.   Defendants did not have probable cause to initiate proceeding.

82.   The criminal proceedings were terminated in plaintiff's favor.

83.   Defendants have deprived plaintiff of his civil, constitutional and statutory rights and have conspired to deprive him of such rights and are liable to plaintiff under 42 U.S.C. §1983, New York State common law, and the New York State Constitution.

84.   As a result of the malicious prosecution implemented by defendants, plaintiff was damaged.

FIFTH CAUSE OF ACTION
42 U.S.C. §1983
Excessive Force
(Against Officer Defendants)

85.   The above paragraphs are here incorporated by reference.

86.   By using excessive force against plaintiff, and failing to intervene on behalf of one another's unlawful and unconstitutional conduct, defendants deprived plaintiff of his rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §1983, including, but not limited to, rights guaranteed by the Fourth Amendment to the United States Constitution.

87.   In addition, the officer defendants conspired amongst themselves to deprive plaintiff of his constitutional rights and took numerous steps in furtherance of such conspiracy, as set forth above.

88.   The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by the United States Constitution.

89.   As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

SIXTH CAUSE OF ACTION
New York State Constitution Art. I § 12
Excessive Force
(Against All Defendants)

90.   The above paragraphs are here incorporated by reference.

91.   By using excessive force against plaintiff, and failing to intervene on behalf of one another's unlawful and unconstitutional conduct, defendants deprived plaintiff of his rights, remedies, privileges, and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. §1983, including, but not limited to, rights guaranteed by

Article I Section 12 of the New York State Constitution.

92.   In addition, the officer defendants conspired amongst themselves to deprive plaintiff of his constitutional rights and took numerous steps in furtherance of such conspiracy, as set forth above.

93.   Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

94.   The officer defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employment as NYPD officers. Said acts by officer defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly and with the specific intent to deprive plaintiff of his constitutional rights secured by the New York State Constitution.

95.   As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

SEVENTH CAUSE OF ACTION
Assault and Battery
(Against All Defendants)

96.   The above paragraphs are here incorporated by reference.

97.   Upon pushing, shoving and punching plaintiff to the ground, handcuffing and arresting plaintiff, defendants made plaintiff fear for his physical well-being and safety and placed him in apprehension of immediate harmful and/or offensive touching.

98.   Defendants engaged in and subjected plaintiff to immediate harmful and/or

offensive touching and battered him without his consent.

99.  Defendants used excessive and unnecessary force with plaintiff.

100.  Defendants, their officers, agents, servants and employees, were responsible for plaintiff's arrest, detention and imprisonment during this period of time. Defendant City, as employer of Officer Defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

101.  As a direct and proximate result of the misconduct and the abuse of authority detailed above, plaintiff sustained the damages described above.

EIGHTH CAUSE OF ACTION
Negligent Hiring & Retention
(Against City Defendant)

102.  The above paragraphs are here incorporated by reference.

103.  Upon information and belief, defendant City, through the NYPD, owed a duty of care to plaintiff to prevent the physical and mental abuse sustained by plaintiff.

104.  Upon information and belief, defendant City, through the NYPD, owed a duty of care, to plaintiff because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated an injury to plaintiff or those in a position similar to plaintiff's as a result of this conduct.

105.  Upon information and belief, defendant officers were incompetent and unfit for their positions. The City of New York was aware of these defendants' incompetence through multiple prior lawsuits against each officer, civilian complaints and criminal charges that were not prosecuted.

106.  Upon information and belief, defendant City knew or should have known through exercise of reasonable diligence that the officer defendants were potentially

dangerous.

107.  Upon information and belief, Defendant City's negligence in hiring and retaining the officer defendants proximately caused plaintiff's injuries.

108.  Upon information and belief, because of the defendant City's negligent hiring and retention of defendant officers, plaintiff incurred damages described above.

NINTH CAUSE OF ACTION
MUNICIPAL AND SUPERVISORY LIABILITY
(Against Defendant City)

109.  The above paragraphs are here incorporated by reference.

THE CITY OF NEW YORK AND NYPD FAIL TO SCRUTINIZE OFFICERS, UNITS AND PRECINCTS WITH HISTORIES OF MULTIPLE LAWSUITS FOR CIVIL RIGHTS VIOLATIONS

110.  The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeat routine misconduct by the same officers, same units and same precincts.

111.  The number of claims against the department doubled over the past decade to a record high of 9,570 filed in 2012. The suits cost taxpayers more than $1 billion dollars during that time period.[1]

112.  In 2010, New York City paid out $136 million[2] for the fiscal year, compared to 2009, when it paid out more than $117 million, and 2008, when it paid $80 million.[3] In

---

[1] New York Daily News, EXCLUSIVE: Detective is NYPD's most-sued cop, with 28 lawsuits filed against him since 2006 (SEE INTERACTIVE GRAPHIC), February 18, 2014, http://www.nydailynews.com/new-york/lawsuits-nypd-double-decade-costing-taxpayers-1b-article-1.1615919#ixzz2ttdX4ZkE.

2 Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/ and June 13, 2011, "With Budget Deadline Looming, City Lawsuits Come Under Scrutiny": http://www.wnyc.org/articles/wnyc-news/2011/jun/13/budget-deadline-looming-city-lawsuits-come-under-scrutiny/, last visited on July 7, 2011

the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[4] More than 40% of those settlements in 2011 stem from excessive force and false arrest.

113.   The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

114.   However, the City of New York has isolated NYPD officers from accountability for its civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers.

---

[3] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

[4] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 , October 15, 2010 last available on December 9, 2010.

115. Former Comptroller John Liu described the City of New York having a "see no evil, hear no evil' attitude," "whose repeated calls for analyzing lawsuits were ignored". See FN1, above.

## DEFENDANTS' PRIOR LAWSUIT HISTORY

116. Defendant Officer Leon Pedigo was previously sued for police misconduct, including false statements, false imprisonment and excessive force in the Eastern District of New York three times: (1) Brown v. City of New York, et al, 09CV04853-SJ-MDG; (settled) (2) Davis v. City of New York et al, 11CV03842-JBW-RML (settled); (3) Henriques v. City of New York, et al, 12CV06126-FB-JMA (settled).

117. Defendant Officer Vladimir Ravich was previously sued for police misconduct, including false statements, false imprisonment and excessive force in the Eastern District of New York under docket number 13-CV-02299-ENV-RER (pending).

118. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits. In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers. This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have incurred large sums of civil rights liability.

119. The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights

lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

120. In 2009, New York City has seen a 46 percent jump in payouts to settle claims against the NYPD and has paid out more than $117 million in fiscal year 2009, compared to $80 million in 2008.[5] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[6]

121. Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD. The City's deliberate indifference towards the contents of civil rights litigation, towards individual officers repeatedly named in lawsuits, towards incidents repeatedly occurring in the same precinct, towards patterns of misconduct that arise in civil rights litigation has caused the constitutional violations against plaintiff.

122. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by

---

[5] Mayor Michael Bloomberg's preliminary Management Report for FY 2009, available at http://www.nyc.gov/html/ops/downloads/pdf/_mmr/nypd.pdf, see page 115, last visited on February 18, 2010.

[6] "NYPD Has Paid Out Nearly $1 Billion in Claims Over Past Decade," by Associated Press Writers Colleen Long and Jennifer Peltz, http://www.law.com/jsp/article.jsp?id=1202473432953 , October 15, 2010 last available on December 9, 2010.

commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.)(Weinstein, J.).

123.   Defendants here have perjured, assaulted and falsely imprisoned plaintiff. Despite the fact that their perjury was proven through the criminal litigation, the Brooklyn District Attorney's office failed to bring perjury charges against them.

124.   The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights.  Despite such notice, the City has failed to take corrective action.  This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

125.  Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

WHEREFORE, plaintiff demands judgment against the defendants, jointly and severally, as follows:

A.     In favor of plaintiff in an amount to be determined by a jury for each of plaintiff's causes of action;

B.     Awarding plaintiff punitive damages in an amount to be determined by a jury;

C.      Awarding plaintiff reasonable attorneys' fees, costs and disbursements of

this action; and

D.      Granting such other and further relief as this Court deems just and proper.


## JURY DEMAND

Plaintiff demands a trial by jury.


DATED:          February 20, 2014
                Brooklyn, New York


                                                Respectfully yours,

TO:

        City of New York                        By: Cynthia Conti-Cook
        100 Church Street                        Bar# CC0778
        New York, NY  10007                      Stoll, Glickman & Bellina, LLP
                                                 Attorneys for Plaintiff
        Police Officer Leon Pedigo               475 Atlantic Avenue, 3rd Floor
        PSA 2                                    Brooklyn, NY  11217
                                                 (718) 852-3710
        Police Officer Vladimir Ravich          (718) 852-3586
        PSA2                                     cconti-cook@stollglickman.com